FRANCIS V. BALCH & another, trustees, *vs.* EDWARD P. SHAW.

Suffolk.    January 26, 1899. — July 3, 1899.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Tax — Collateral Legacies and Successions — Incorporation of Trustees — Gifts to Charitable Institutions without the Commonwealth.*

In 1892 B. gave property in trust, the principal at the time of his decease to "be applied by my trustees to such charitable purposes as shall be determined by a board to be called the Board of the R. Fund, which I desire to consist of at least seven members." The deed then named certain persons as the original members of the board and proceeded, "My wish is.that they shall either apply the fund in whole or part to some charitable object, such as a trade or industrial school, or other charitable purpose they may think preferable, or shall apply the income from time to time for charity or in aid of charitable institutions in such way as they deem best"; and they were authorized to transfer the fund to any corporation "organized for like charitable purposes to those they wish to carry out, and in such case the board may dissolve or continue itself as a board of visitors." And they were also authorized either to transfer the fund to the board, or to administer it "with all the powers herein given as the board may deem best." The settlor died on March 14, 1897. Those named in the deed as members of the board, with one exception, accepted the trust. In April, 1897, the members of the board were incorporated, the certificate stating the purpose to be that "of administering . . . the fund created by the deed of B. . . . for the charitable purposes by him thereby directed." After receiving the fund, the corporation paid it out to institutions incorporated for charitable purposes, some of which were within and others without the Commonwealth. *Held,* that the R. corporation was a charitable institution within the meaning of Pub. Sts. c. 11, § 5, cl. 3, which exempts charitable institutions from taxation, that no part of the fund was subject to a tax under the St. of 1891, c. 425, imposing a tax on collateral legacies and successions, and that it was immaterial that a portion of the fund was given to charitable institutions without the Commonwealth.

PETITION, to the Probate Court of Suffolk County, by the trustees under a deed of trust of Belinda L. Randall, for instruc-

tions as to the payment of a collateral inheritance tax. The judge entered a decree, the nature of which appears in the opinion, and an appeal was taken. *Knowlton*, J., reported the case for the consideration of the full court. The facts appear in the opinion.

*F. T. Hammond*, Assistant Attorney General, for the respondent.

*J. B. Warner*, for the Randall corporation.

LATHROP, J. The material facts in this case are these: On April 27, 1892, Belinda L. Randall made a deed of trust by which she gave to Francis V. Balch and William Minot property valued at $537,657, in trust to apply the income to the payment of annuities to certain persons during their lives, and of one annuity from and after the death of the settlor, and to pay the remainder of the income to the settlor during her life. The trust deed then provided for the disposition of the principal of the fund, after the settlor's death, as follows: " 3. At my decease the balance of the property (including the portion if any set aside for annuities as they fall in) shall be applied by my trustees to such charitable purposes as shall be determined by a board to be called the Board of the J. W. Randall Fund, which I desire to consist of at least seven members." The deed then nominated certain persons as the original members of the board, and proceeded as follows: " My wish is that they shall either apply the fund in whole or part to some charitable object, such as a trade or industrial school, or other charitable purpose they may think preferable, or shall apply the income from time to time for charity or in aid of charitable institutions in such way as they deem best. If they think best the fund in whole or part may be transferred to any corporation or body organized for like charitable purposes to those they wish to carry out, and in such case the board may dissolve or continue itself as a board of visitors. I hope that in any case my brother's name may be connected with the use that may be determined on."

The deed gave the trustees the right either to transfer the property to the board or to act as the business administrators of the fund, " with all the powers herein given as the board may deem best."

The settlor further reserved to herself full power at any time to revoke or alter the provisions of the instrument by

any writing or writings signed by her and witnessed by three witnesses.

The trustees accepted the trust, and administered the property as directed during Miss Randall's life, paying the annuities, and also paying the net income to her.

On March 14, 1897, Miss Randall died, leaving a will and three codicils, which were admitted to probate on April 1, 1897. These testamentary instruments affected some of the annuities only, and are immaterial to the question before the court.

The persons named in the deed of trust as members of the Board of the J. W. Randall Fund, with the exception of one, accepted the trust. In April, 1897, the members of that board determined that it was expedient to organize themselves into a corporation, and that the fund held by Messrs. Balch and Minot as trustees for charitable purposes under the deed of trust should be paid over by the trustees to such corporation, and held and applied by it to charitable uses. Accordingly, an agreement of association, dated May 8, 1897, for the purposes of incorporation under the general laws of this Commonwealth, was signed by all the members of the board, and pursuant to this agreement the J. W. and Belinda L. Randall Charities Corporation was incorporated, and a certificate of such incorporation issued under date of June 11, 1897, the purpose of the incorporation being stated to be that " of administering and applying the fund created by the deed of Belinda L. Randall, dated April 27, A. D. 1892, recorded with Suffolk Deeds, Lib. 2406, Fol. 497, for the charitable purposes by her thereby directed or authorized." Messrs. Balch and Minot, trustees, applied so much of the principal of the trust fund in their hands as was necessary to the payment and satisfaction of the annuities, legacies, and other charges outside of the charitable trust imposed on said fund by the said trust deed or the said will, and paid over to the corporation, to be applied to charitable purposes according to its charter, the sum of $349,499.02, which was the entire principal of the trust fund available for charities except securities valued at $26,359.51, which securities Messrs. Balch and Minot have retained to await the decision of the court as to the liability of the trust fund to taxation under the statutes taxing collateral legacies; and any of said securities not needed for the payment of such tax are to be paid over to the corporation.

After receiving the fund, and before the filing of the petition in this case, the corporation made payments for charitable purposes, to the amount of $284,500, to certain institutions incorporated for charitable purposes, some of which are within the Commonwealth and others are without the Commonwealth. Since the petition was filed similar appropriations and payments have been made.

The petition above mentioned was filed in the Probate Court by the trustees, Messrs. Balch and Minot, to obtain the instructions of the court on the question whether the fund they received and held under the trust deed was liable to a legacy tax under the St. of 1891, c. 425. The Probate Court decided that certain of the annuities were subject to the tax, and that the gifts already made by or through the corporation to charitable institutions not incorporated in this Commonwealth were subject to the tax, but that charitable institutions incorporated here were exempt; and that the residue of the funds held by the corporation and then undisposed of, and any money which it might receive thereafter from the trustees, should be taxable or not, according to the use which it might subsequently make of them.

From so much of the decree as imposed a tax on any funds whatever, which the corporation had received or might receive, the corporation appealed. The case was heard before a single justice of this court, on the pleadings and agreed facts, and evidence both documentary and oral. The justice was of the opinion that no part of the fund held and paid out by the corporation was subject to a tax under the St. of 1891, c. 425. Considering the question a doubtful one, the justice reported the case for our determination.

The question before us depends upon the construction to be given to the St. of 1891, c. 425, § 1, which, so far as material to this case, is as follows: " All property within the jurisdiction of the Commonwealth, and any interest therein, whether belonging to inhabitants of the Commonwealth or not, and whether tangible or intangible, which shall pass by will or by the laws of the Commonwealth regulating intestate succession, or by deed, grant, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor, to any

person in trust or otherwise, other than to or for the use of the father, mother," and certain relatives named " of a decedent, or to or for charitable, educational, or religious societies or institutions, the property of which is exempt by law from taxation, shall be subject to a tax of five per centum of its value, for the use of the Commonwealth."

The persons composing the board of the Randall Fund were not themselves the donees. They had the power to direct the trustees to apply the fund to charitable purposes, to apply the income from time to time to charity, or to cause the fund to be transferred in whole or in part " to any corporation or body organized for like charitable purposes to those they wish to carry out." This board had merely a power of appointment, and until such appointment was made and acted on there was no gift to any one within the intent of the act. When the appointment was made, the effect was the same as if the name of the corporation had been written in the deed as the donee. *Emmons* v. *Shaw*, 171 Mass. 410.

The question then is whether the Randall corporation is a charitable institution within the Pub. Sts. c. 11, § 5, cl. 3, which exempts charitable institutions from taxation. The contention of the Attorney General is that the board of managers in appointing the fund to the corporation appointed it merely as a trustee or conduit upon uses to be declared by the board, and that the purpose of organizing the corporation was to evade the law. We find nothing in the facts of the case or in the evidence to warrant this contention. The board did no more than it was authorized to do under the trust deed and the laws of the Commonwealth. The articles of association declared the purposes of the corporation to be the administering and applying of the fund created by the deed of Miss Randall " for the charitable purposes by her thereby directed or authorized." On reference to the deed, it appears that the fund could be used in its entirety for a charity to be founded, or could be distributed to existing charities.

The fact that the members of the corporation are identical with those who previously constituted the board of managers seems to us to be immaterial. The corporation is a distinct legal entity, independent of the individuals who compose it.

Further, the evidence shows that the question of the use which should be made of the fund was the subject of earnest discussion on the part of the members of the corporation, some of them advocating the retention of the fund as an entirety, while others were in favor of its distribution among existing charities; and the fund was not distributed for over a year.

The use which a Massachusetts charitable corporation may make of any part of its funds, so long as it does not violate the terms of the instrument under which it has received it, cannot render such use illegal, or subject it to taxation, if the use is a charitable one. While it is held in *Minot* v. *Winthrop*, 162 Mass. 113, 126, that a bequest to a religious society in another State, which by the laws of that State was exempt from taxation, was subject to the special tax imposed by the St. of 1891, c. 425, this was so held, as a matter of the true construction of the statute, and not as a matter of policy. If the bequest in that case had been made to a Massachusetts charitable institution, and that institution had seen fit to expend the money in charitable purposes in another State, the question would have been presented which is now before us. We know of no policy of this Commonwealth which obliges a charitable institution organized here to limit its field of usefulness, under penalty of taxation, to this Commonwealth. Large sums of money are given every year by will to charitable and religious institutions organized under the laws of this State, for foreign and domestic missions, and the latter term is not confined to missions in Massachusetts. We find nothing in the policy of our law, or in the statute before us, which calls upon us to sustain the view of the Attorney General.

The result is that so much of the decree of the Probate Court must be reversed as imposes a tax on any part of the fund received or to be received by the J. W. and Belinda L. Randall Charities Corporation from the fund established by Miss Randall's trust deed.

*So ordered.*