(No. 23527.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE FIRST NATIONAL BANK OF CHICAGO *et al.* Appellants.

*Opinion filed October 14, 1936.*

WILSON & McILVAINE, (J. F. DAMMANN, STUART J. TEMPLETON, and SIDNEY K. JACKSON, of counsel,) for appellants.

OTTO KERNER, Attorney General, (THOMAS V. GOREY, and STANLEY WATSON, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants by this direct appeal seek the reversal of a judgment of the county court of DuPage county assessing an inheritance tax of $122,570 against them, as trustees of the Farm Foundation, upon the bequest of $500,000 given to them in trust for charitable purposes under the sixth clause of the will of Alexander Legge, deceased. On March 6, 1935, the county judge of said county, acting under the statute, approved the report of the inheritance tax appraiser in said estate and entered an order fixing the tax payable to the State of Illinois by the beneficiaries under the will of the decedent. By said order it was held that a bequest of $500,000 for charitable purposes to the Farm Foundation, of which appellants are trustees, was not exempt as a charitable bequest within certain statutory provisions. On appeal by appellants the county court approved the order of the county judge and entered judgment for the tax so assessed. This appeal is from that judgment and presents the sole issue of the exemption of the bequest from inheritance tax under section 28 of an act commonly known as the Inheritance Tax act, (State Bar Stat.

chap. 120, par. 422, p. 2704,) which reads as follows: "When the beneficial interests of any property or income therefrom shall pass to or for the use of any hospital, religious, educational, Bible, missionary, tract, scientific, benevolent or charitable purpose, or to any trustee, bishop or minister of any church or religious denomination, held and used exclusively for the religious, educational or charitable uses and purposes of such church or religious denomination, institution or corporation, by grant, gift, bequest or otherwise, the same shall not be subject to any such duty or tax, but this provision shall not apply to any corporation which has the right to make dividends or distribute profits or assets among its members."

There is no dispute as to the facts. Alexander Legge died December 3, 1933, a resident of DuPage county, Illinois. The sixth clause of his will, dated February 18, 1932, with which we are concerned, is as follows:

"*Sixth*—One-half of the residue of my estate, real, personal and mixed, but not to exceed five hundred thousand dollars ($500,000) in value, I give, devise and bequeath in trust for charitable purposes as follows: I am now interested with others in the formation of a foundation to be devoted to the general welfare of the farming population of the United States and improvement of the conditions of rural life. If, prior to my death, such a foundation shall have been formed and I shall have taken part in its formation or contributed to its endowment, this residuary devise and bequest shall go to said foundation to be used and applied for charitable purposes in accordance with the provisions of the charter or trust agreement creating the same," etc.

Deceased had long been associated with the International Harvester Company and at the time of his death was its president. At one time he was chairman of the Federal farm board and was keenly interested in the problems of the farmer. He associated with him a number of promi-

nent men equally interested in the same subject, and after several years of study a trust agreement was entered into dated February 10, 1933, between the founders thereof and the First Union Trust and Savings Bank, a corporation of Illinois, (now the First National Bank of Chicago,) hereinafter called the corporate trustee. The objects of the foundation are recited in article 1, as follows:

"Recognizing the importance to the national welfare of improving and at all times maintaining healthy and satisfying conditions of life for the farming and rural population of the country with adequate economic returns and social, educational and cultural advantages, a continuing foundation, to be known as the Farm Foundation, is hereby created. The purpose of the foundation is to administer all funds and property now or hereafter contributed by the founders or others and to use and devote the same and the income thereof to the general welfare of the rural population of the United States of America in such ways as the board of trustees may from time to time determine. As an amplification of said purposes and without in any way limiting the same or the discretion of the board of trustees, it is contemplated that said funds may be expended,

"1. To encourage and develop coöperative effort and community organization and consciousness as means for improving the economic, social, educational, and cultural conditions of rural life.

"2. To stimulate and conduct research and experimental work for the study of any economic, social, educational or scientific problem of importance to any substantial portion of the rural population of the country, including problems of production, marketing and purchasing and the sound coördination of the agricultural with the industrial, financial and mercantile life of the country.

"3. To encourage, aid or finance any university, institution, corporation or persons in the conduct of any such research or experimental work.

"4. To disseminate education and useful information developed as a result of any such study, research and experimentation, or otherwise, in such manner as to be of practical value to the farming population.

"5. To promote and enlarge the intellectual and cultural interests and opportunities of the rural population through community action."

Article 2 places the activities of the foundation, except the handling of the funds, in a board of trustees, specifying their qualifications; the filling of vacancies on the board; for additional members; the times of meetings, and as to advisory counsel.

Article 3 provides the corporate trustee shall hold title to, manage, invest and distribute the property and income of the foundation, and provision made as to the handling of the funds and the powers of the corporate trustee.

Former Governor Frank O. Lowden, and Paul E. Mathias, secretary and assistant to the general counsel of the Illinois Agricultural Association, testified, over objection, that fundamental farm problems are not local; that it was impossible to help Illinois farmers by study and education without helping farmers in every other State where similar problems occur, and that a program for the solution of farm problems confined to Illinois could not possibly be effective; that the Farm Foundation will be of substantial benefit to the farmers of Illinois, and that Chicago, the agricultural capital of the nation, will also benefit by improved conditions of the farmers in this and other States, and that the work provided for in the foundation, if carried out with the powers enumerated in the trust agreement, must, in their opinion, result in substantial benefit to the farmers of Illinois. This testimony was later stricken out on the ground that the trust agreement was the best evidence.

The county court in effect found that this trust was not one that came under the jurisdiction of the courts of this

State but was more analogous to a foreign corporation, and that it did not appear that its purposes were to benefit the people of Illinois alone, and so was not within the exemption statute. Appellants argue here that the bequest is exempt under paragraph 28 of the Illinois Inheritance Tax act, and that it was error to strike the testimony of the witnesses Lowden and Mathias regarding the scope and benefits of the Farm Foundation. It is admitted in this record that the foundation is a benevolent, scientific, educational and charitable trust devoted to purposes intended to benefit a large portion of the citizens of the State, and appellants contend it was error on the part of the court to hold that by reason of the character and method of formation of the trust the courts of Illinois do not have jurisdiction over the trust. They say, also, there is nothing in the statute to indicate that all the benefits of a charitable trust must be confined to the State of Illinois, but that the authorities which have considered the question have held that a substantial benefit to the citizens of a State is sufficient to bring a bequest within the exemption statutes of. such State.

Appellee says that the exemptions accorded religious, charitable or educational organizations do not extend to a foreign organization even though it operates a branch in the State unless the gift is in the nature of a trust to be expended solely within the State, and as the foundation was organized out of the State and its funds were not to be expended solely in this State it was properly taxed.

The questions presented on this record have not heretofore been considered by this court. It has uniformly been held by this court that under section 28 gifts to foreign corporations or to non-residents, to be expended outside the State, are not exempt from taxation. (*People* v. *Illinois Merchants Trust Co.* 328 Ill. 223; *People* v. *O'Donnell,* 327 id. 474; *People* v. *Missionary Society,* 303 id. 418.) Counsel for appellee argue in support of the holding of the county court, that since this State has no power of visita-

tion and control over the corporate trustee it is not exempt under section 28 of the Inheritance Tax act. As this trust is conceivably a benevolent and charitable trust, the question of the administration and the location of such administration becomes important. In order to determine where the administration of the trust is located and whether it is under the jurisdiction of the authorities of this State, consideration must be given to the provisions of the trust instrument, the residences of the trustees, the residences, if any, of the beneficiaries, the location of the properties and the location where the business of the trust is to be carried on. (Re-statement Conflict of Laws, sec. 297, p. 379.) A testamentary trust of movables is administered by the trustee according to the law of the State of the testator's domicile at the time of his death unless the will shows an intention that the trust should be administered in another State, as it is natural to suppose that the trustee intended the trust to be administered in the same place in which his estate was to be administered and under the direction of the courts of that State. (Re-statement Conflict of Laws, sec. 298, p. 380.) These are but sensible and logical rules, to be applied in determining the location of the trust. So applying them here, we find the agreement was entered into, executed and delivered in Chicago. The corporate trustee holds title to the trust funds for the benefit of the foundation, which at the time of the execution of the trust agreement was the First Union Trust and Savings Bank, an Illinois corporation, now the First National Bank of Chicago. The property constituting the trust, including the legacy under consideration, is in the State of Illinois; eight of the twenty-one trustees named in the trust agreement as members of the board of trustees to direct the activities of the Farm Foundation were residents of Illinois; the office of the foundation is in Chicago and all meetings of the board of directors have been held in that city. In case any cause for litigation should arise with reference to the trust,

the circuit or superior court of Cook county would have jurisdiction over the trust and the corporate trustee, the owner of the trust funds for the benefit of the Farm Foundation. Thus far it is clear that the trust is within the exemption of section 28 unless it be because the trust is not incorporated in Illinois and the expenditure of the trust funds is not restricted to the State of Illinois.

In *People* v. *Missionary Society, supra,* Adele Edwards, a resident of Illinois, devised and bequeathed the residue of her estate to the Woman's Home Missionary Society of the Methodist Episcopal Church, a charitable and benevolent society organized and incorporated under the laws of Ohio. For many years prior to the bequest to it, it maintained an office in the city of Chicago and maintained such office at the time of the hearing. It owned and conducted orphanages and deaconesses homes for charitable purposes within this State. It collected money for its charitable purposes throughout the United States and expended it solely for charitable purposes throughout the several States of the Union, and it expended a fair portion of its income upon its charitable institutions in Illinois. The sole question presented and decided was whether the society, a corporation organized in the State of Ohio, was exempt from the payment of an inheritance tax under the law of Illinois. In affirming the order of the county court assessing inheritance taxes against the society on the ground that it was a foreign corporation and was not exempt from the Inheritance Tax law of this State this court said: "There is no question that the appellant is a benevolent and charitable corporation and that all the funds received by it are expended for benevolent and charitable purposes, as aforesaid. If it were a corporation of this State there could be no doubt as to its right of exemption from said tax. The amendatory act contains no language that indicates that it was the legislative intent that its provisions should apply to corporations created under the laws of another

State of the United States. The rule of construction accepted by this court is, that an act of the legislature granting powers, privileges or immunities to corporations must be held to apply only to corporations created under the authority of this State and over which this State has the power of visitation and control, unless the intent that the act shall apply to other than domestic corporations is plainly expressed in the terms of the act.—*In re Estate of Speed,* 216 Ill. 23; *People* v. *Western Seaman's Friend Society,* 87 id. 246; *Balleis' Estate,* 144 N. Y. 132; *In re Prime's Estate,* 136 id. 347; *Humphreys* v. *State,* 70 Ohio St. 67; DosPassos on Inheritance Tax Laws, (2d ed.) sec. 36."

In the case before us we are not dealing with a foreign corporation but with a trust organized, existing, and, so far as appears in the record, has been, and is, operating solely within the State of Illinois. Were the trust incorporated under the laws of Illinois, as said in the *Missionary Society case, supra,* there would be no question but that the legacy under consideration would be exempt from said tax. Does the fact that the Farm Foundation, to which the legacy under consideration was given through a trust organized and operating in Illinois though not incorporated, place the trust in the same category as a foreign corporation, or is it to be classed the same as though it were incorporated under the laws of this State?

Appellee argues that as the trust agreement provides that a majority of the trustees may change the corporate trustee and may move the principal offices of the trust into another State the trust should be considered the same as a foreign corporation. In *Parkhurst* v. *Burrill,* 228 Mass. 196, 117 N. E. 39, it was held, on consideration of an exemption statute similar to ours, that the exemption of a trust of the character here involved depends upon the purpose declared and the work done prior to and up to the time the action arose, which would, in an inheritance tax case, be at the time of the death of the donor or creator of

the trust. Such was the view of the court, also, in *Pierce* v. *Stevens*, 205 Mass. 219, 91 N. E. 319. The purposes declared by the trust agreement are unaffected by the method of creating the Farm Foundation, whether incorporated or unincorporated.

Appellee argues in support of its claim that the foundation bears more analogy to a foreign corporation than a creature of Illinois, whether a person or corporation, and says that while the first meeting of the board of trustees was to be held in Chicago, subsequently meetings might be held at a time and place fixed by the board. . Under the views expressed concerning the jurisdiction of this State over this foundation, counsel's argument cannot be held to be impressive. Were we permitted to deal in conjectures as to the future, numerous situations might arise which would take charitable trusts of the character here under consideration from under the exemption statutes of the State. The conditions to be dealt with, however, are such as appear from this record. We are of the opinion that it cannot be said that this trust must fall in the category of foreign corporations not using their trust funds entirely for the benefit of this State.

Appellee argues, as to the second point, that as a large portion of the proceeds of the trust may, in the discretion of the trustees, be expended without the State, the trust may not receive the benefit of the exemption statute. There is no statute, and we know of no declared policy of the State, that a charitable institution organized in this State shall limit its field of usefulness to the territorial limits of the State under penalty of taxation. Surely it cannot be said that if there be expenditure of funds in another State, say, for example, in Ohio or Indiana, for the purpose of finding means of eradicating a certain parasite known as the corn borer, affecting the corn crops in those States, such expenditure would not be of great benefit and of great practical value to the Illinois public and possibly

save this State from expending large sums of money to obtain the objective for which the Farm Foundation expended its funds. We think that such position cannot be successfully maintained. It is true, the expenditure of trust funds in such manner would benefit not only this State but those States in which the expenditure was made. Such, however, has never been held to place the purposes of the fund from which such expenditures arise, outside a statutory exemption clause, and we think it should not be so held. The main object and purpose of the foundation, as declared in the will of the testator, are to aid in solving agricultural problems of the nation. It is a matter of common knowledge that many of those problems and their solution are of great importance to the nation. Illinois is one of the largest of the agricultural States and practically in the center of the farming belt of the country. That which is of benefit to the farmers of one State may equally be of benefit to the farmers of Illinois. The testimony of the witnesses Lowden and Mathias not only was competent on this phase of the issue as illustrating the purpose of the trust, but was instructive and valuable as showing that the purposes declared in the testator's will are of special application and benefit to Illinois. It was error to strike their testimony from the record.

Consideration of questions involved leads us to the conviction that the Farm Foundation is a charitable and benevolent trust organized and operating within the jurisdiction of the State of Illinois to benefit the rural population of the State and that such legacy given to that trust under the will of Alexander Legge is exempt under section 28.

The judgment of the county court of DuPage county is reversed.

*Judgment reversed.*