## STATE v. EVANS SCHOLARS FOUNDATION OF MINNESOTA, INC.

153 N. W. (2d) 148.

September 15, 1967—No. 40,443.

*Oppenheimer, Hodgson, Brown, Wolff & Leach* and *Robert B. Hawkins,* for appellant.

*George M. Scott,* County Attorney, and *David E. Mikkelson,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

This appeal is from a judgment of the district court.

Evans Scholars Foundation of Minnesota, Inc., by its petition for exemption from real estate taxes payable in 1964 and by its answer to the delinquent personal property tax list for that year, has placed in issue the question of whether a house located at 1115 Fifth Street S. E. in Minneapolis, together with its contents, was, at the time involved, used by the Foundation for public charitable purposes within the meaning of the applicable provisions of the Minnesota Constitution and statutes.

The facts as found by the trial judge, who concluded that the Foun-

dation was not an institution of purely public charity, are these: Evans Scholars Foundation of Minnesota, Inc., is a nonprofit corporation under the laws of this state and owns the real and personal property located at 1115 Fifth Street S. E. in Minneapolis. It awards scholarships to certain selected applicants who wish to attend the University of Minnesota. Each successful applicant receives full payment of his tuition at the university and, in addition, payment of certain incidental fees, such as athletic tickets and laboratory fees. He is also given his lodging at "Evans House," the name given to the home situated at the address stated.

To be eligible for a scholarship of the kind awarded by the Foundation, the applicant must have caddied for two years at a Minnesota golf club belonging to the Western Golf Association; be in the upper 25 percent of his high school class; have financial need; be unable to attend college without the aid of the scholarship; and be of high moral character and integrity.

The general policy of the Foundation is to award scholarships to students coming from families having an income of not more than $8,500 per year, but, on occasion, scholarships have been awarded to applicants coming from families having an income of as much as $10,000 per year.

The Foundation is affiliated with the Western Golf Association, which is headquartered in Golf, Illinois, and also with the Minnesota Golf Association, the local affiliate of the Western Golf Association. There are approximately 30 golf clubs (public, semiprivate, and private) in the State of Minnesota which are connected with the Western Golf Association.

The revenue used for the expenses of the scholarship program is received entirely from contributions, most of which are made by golfers at Western Golf Association courses. There are approximately 90 golf courses located within the State of Minnesota, so those with Western Golf Association membership comprise about one-third of the total. Evans House is located near the Minneapolis campus of the University of Minnesota and can accommodate approximately 45 students. During the 1964-1965 academic year there were 33 in residence there.

Minn. Const. art. 9, § 1, provides:

"* * * Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, but * * * institutions of purely public charity * * * shall be exempt from taxation, * * *."

Minn. St. 272.02 provides in part:

"All property described in this section to the extent herein limited shall be exempt from taxation:

* * * * *

"(6) Institutions of purely public charity."

In State v. Willmar Hospital, Inc. 212 Minn. 38, 41, 2 N. W. (2d) 564, 566, we said:

"Minn. Const. art. 9, § 1, provides that institutions of purely public charity shall be exempt from taxation. The word 'purely' means 'wholly,' 'solely,' and 'exclusively' in such exemption provisions."

Of the cases relied upon by the parties, the one which seems most apt on its facts is In re Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 135 N. W. (2d) 881. In that case, starting with the proposition that whether property is exempt from taxation as a "purely public charity" under the constitutional and statutory provisions is a fact question depending upon the particular use to which the property is devoted, we affirmed the trial court's decision in favor of an exemption. The activity there involved, supported by gifts and contributions, was intended to give a course of study and training to an indefinite number of young people concerning the nature of our political and economic system through practical experiments by the participants. In that case we accepted the determination of the trial judge that, because the use of the property was free of elements of self-interest or benefit to those making the program possible, and because the effort contributed to the betterment of society and lessened the burdens of government, it was a purely public charity. But we noted that the benefits of the program were open to everyone interested in participating, saying (271 Minn. 387, 135 N. W. [2d] 883):

"* * * The program is available to all, males and females alike, between the specified age limits."

The distinguishing feature of the case before us (and the one which, in our opinion, justifies the determination made by the trial judge) is the fact that the scholarships awarded by the Foundation are not available to all persons in a given age classification. The scholarships are awarded only to young men who have been employed as caddies by golf clubs which are members of the Western Golf Association. Only 30 out of a possible 90 golf clubs in Minnesota are included in this membership. The trial judge felt that an indirect benefit is available to the participating golf clubs and golfers because of the incentive for young men of exceptional qualifications to take employment in order to qualify for the scholarships.

Appellant argues that exemption should not be denied in this case because of the limitations placed by it on scholarship eligibility. It directs our attention to the facts that the Evans Foundation program is open to anyone, regardless of race, religion, or color, if he meets the qualifications as to employment experience and financial need which have been mentioned; that a boy need not to be a caddy at the time he applies for and receives a scholarship; that there is no pro rata allocation of the scholarships to the various golf clubs in Minnesota, selection being based entirely upon the merits of the individuals applying; and that of the golf clubs in Minnesota which are *not* affiliated with the Western Golf Association, some, at least, are located in smaller communities where the services of caddies are in less demand. Appellant emphasizes that revenue for the Evans scholarship program in Minnesota comes entirely from voluntary contributions and that none of the wages paid to the caddies are withheld for contributions to the program. And with respect to the thought that "exceptional caddies" are induced by reason of the program to work at golf courses affiliated with the Western Golf Association, appellant draws attention to at least one instance where the recipient of an Evans scholarship could not have known about the existence of the program at the time of his employment, because it was not then in existence.

Appellant's position is summarized in this statement:

"The actions of public spirited citizens in the formation of the Evans

program have provided this state with educated young men who would have had great difficulty and perhaps would have found it impossible to obtain that education without the Evans program. Admittedly, the program is selective for the Foundation is looking for the most capable and deserving boys to receive these scholarships. The results of the program have provided this state with well-educated young people whose impact on the community through their talent is hard to measure but is nonetheless real and beneficial. For these reasons appellant believes that its house and personal property used in the operation of its scholarship program are entitled to exempt status."

Because the program of the Foundation undoubtedly serves a most worthy purpose, we have given careful consideration to appellant's claim that the principle of In re Junior Achievement of Greater Minneapolis, Inc. *supra*, should be extended to encompass this present situation. We have also considered such cases as Champlin v. Powers, 80 R. I. 30, 90 A. (2d) 787, 33 A. L. R. (2d) 1176; Brunson v. Board of Freeholders, 76 N. J. Eq. 480, 74 A. 449; Bowditch v. Attorney General, 241 Mass. 168, 134 N. E. 796, 28 A. L. R. 713; People v. First Nat. Bank, 364 Ill. 262, 4 N. E. (2d) 378, 108 A. L. R. 277; Bauer v. Myers (8 Cir.) 244 F. 902; and Quinn v. Peoples Trust & Sav. Co. 223 Ind. 317, 60 N. E. (2d) 281, 157 A. L. R. 885, which held that reasonable restrictions may be placed on the selection of beneficiaries of a charity without damaging the public nature of that charity. These cases would be persuasive here if any needy young man who had worked for 2 years as a caddy or in some other similar capacity were eligible for the benefits of the program. And this would be so, even though demonstrated ability as a student was also a condition of eligibility.

A restriction on the class of persons eligible for benefits does not in and of itself make a charitable purpose nonpublic. The restriction may be designed to assure that the benefits will inure to those most deserving, most in need, or most likely to be of increased public usefulness when the benefits have been assimilated. In such cases the public interest justifying tax exemption may be furthered by the restriction. But we do not think past employment as a caddy at a limited number of golf

courses—a principal condition of eligibility for the scholarships awarded to the occupants of Evans House—is a curtailment of this kind. It is a restriction which, in our opinion, serves a private rather than a public objective. Because this is so, exemption of the property from taxation as a purely public charity is not possible. We therefore accept the trial court's disposition of the case.

Affirmed.